UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CYNTHIA M. DURAN, N/K/A ADAMS, | Case No. 3:10-cv-05738-RBL-KLS |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | Noted for August 12, 2011 |
| Defendant. | |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for an award of benefits.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On September 7, 2005, plaintiff filed an application for disability insurance and another one for SSI benefits, alleging disability as of March 23, 2005. <u>See</u> Administrative Record ("AR") 128, 231, 235. Both applications were denied upon initial administrative review and on reconsideration. <u>See</u> AR 128, 183, 186, 189, 193, 201, 204. A hearing was held before an

REPORT AND RECOMMENDATION - 1

1   administrative law judge ("ALJ") on May 28, 2009, at which plaintiff, represented by counsel,

2   appeared and testified, as did a lay witness and a vocational expert. See AR 137-78.

3         On June 19, 2008, the ALJ issued a decision in which plaintiff was determined to be not

4   disabled. See AR 128-36. Plaintiff's request for review of the ALJ's decision was denied by the

5   Appeals Council on September 16, 2010, making the ALJ's decision defendant's final decision.

6
7   See Tr. 1; see also 20 C.F.R. § 404.981, § 416.1481. On October 11, 2011, plaintiff filed a

8   complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The

9   administrative record was filed with the Court on December 28, 2011. See ECF #9. The parties

10  have completed their briefing, and thus this matter is now ripe for the Court's review.

11        Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an

12  award of benefits because the ALJ erred: (1) in rejecting the opinion of her treating physician;

13
14  (2) in assessing plaintiff's credibility; and (3) in evaluating the lay witness evidence in the

15  record. The undersigned agrees that the ALJ erred in determining plaintiff to be not disabled,

16  and, for the reasons set forth below, recommends that the ALJ's decision be reversed, and that

17  this matter be remanded to defendant for an award of benefits.

18  <center>DISCUSSION</center>

19        This Court must uphold defendant's determination that plaintiff is not disabled if the

20  proper legal standards were applied and there is substantial evidence in the record as a whole to

21
22  support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

23  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

24  support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

25  F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See

26  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F.

Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Physician

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can

REPORT AND RECOMMENDATION - 3

only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The record contains several state agency physical evaluation forms completed by Kathryn Tonder, M.D., in which she opined that plaintiff' was severely limited in her ability to perform one or more basic work activities and that she should be granted disability benefits. See AR 84-91, 473-76, 479-82, 500-03; see also AR 58 ("Long term outlook is poor for return to work."), 507-08 (combination of medical impairments would result in missing three or more days per month of work on more probable than not basis). The ALJ rejected all of Dr. Tonder's opinions for the following reasons:

REPORT AND RECOMMENDATION - 4

> . . . Dr. Tonder ha[s] suggested that the claimant cannot work due to pain and limited motion, but the treatment notes do not suggest the cause of the level of pain that the claimant reports. Pain clinic and neurosurgical evaluations suggest that the claimant's pain is not neurological and her reported numbness and tingling is not in normal dermatomal distribution which is consistent with reported normal nerve conduction studies. The claimant is on significant narcotic pain medications, but the cause of her pain seems to be myofascial which would best be addressed with physical therapy which she has not followed through with. . . .
>
> . . . Dr. Tonder refers to the limited range of motion as the objective evidence of impairment, but the limitation of motion is what should be addressed by physical therapy that the claimant has not followed through with. . . . There is also evidence that the claimant has had treatment or evaluations that have not been submitted to the record (the actual nerve conduction studies that Dr. Tonder refers to in her treatment notes). While the claimant does have MRI evidence of degenerative disc disease and stenosis, the opinion of Dr. [Seth J.] Stankus, D.O.], a neurologist, who concluded that her symptoms were not related to her stenosis is given greater weight given his expertise in the field.
>
> While Dr. Tonder's opinion would normally be given great weight as she is the claimant's treating physician, the record suggests that she has moved into the realm of advocate. She has completed numerous forms suggesting that the claimant is disabled while not addressing the opinions of many of the experts who have examined her or the lack of objective neurologic findings. She has continued to prescribe increasing levels of narcotic medication and not required the claimant to follow through with physical therapy; the option that the pain specialist and the neurologist both felt would be most helpful.
>
> In reviewing the record as a whole, the findings of the State Agency [non-examining, consultative] physicians are consistent with the overall record and reasonable based on the objective medical evidence.

AR 134-35. Plaintiff argues these are not valid reasons for rejecting Dr. Tonder's opinions. The undersigned agrees.

First, a review of the record shows Dr. Tonder's evaluation reports and progress notes do contain objective clinical findings of pain and tenderness, as well as of significant limited range of motion in plaintiff's neck and upper back and extremities. See AR 72, 28, 85-86, 89-91, 474, 476, 480, 493, 496, 501, 503, 507-08. Second, while it may be that the cause of plaintiff's pain is not neurologic in origin, nevertheless the clinical findings recorded by Dr. Tonder do provide a

REPORT AND RECOMMENDATION - 5

legitimate basis for her diagnoses and opinions. See Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (physical examination results provide basis for diagnosis of physical illness or injury). Nor does the ALJ give any explanation as to why plaintiff's pain should be neurologic in origin – as evidenced, say, by imaging studies revealing nerve impingement or other findings indicative of radiculopathy – as opposed to being based on physical examination results showing the presence of pain/tenderness and loss of range of motion.

In this regard, the undersigned agrees with plaintiff that the ALJ was acting improperly as his own medical expert. See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ may not base decision on "own expertise," and should avoid commenting on meaning of objective medical findings without supporting medical expert testimony); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).

In addition, it is not just the existence of pain that Dr. Tonder based her opinions on, but as noted above the severe loss of range of motion as well. Here too, the ALJ fails to explain why the lack of neurologic findings in the record undercuts the results of the physical examinations Dr. Tonder performed. The ALJ goes on to suggest that it is not appropriate for plaintiff to be placed on the amount of narcotic pain medication Dr. Tonder has prescribed, given that her pain appears to be myofascial that would be best addressed through physical therapy. But again as pointed out by plaintiff, while physical therapy had been recommended as being important with respect to her long-term treatment strategy, no medical source – including Dr. Stankus – actually

REPORT AND RECOMMENDATION - 6

stated physical therapy was her best treatment option. See AR 310, 320, 327, 428.

The evidence in the record, furthermore, indicates that physical therapy at best provided plaintiff with only temporary – and even then less than complete – relief. See AR 74, 79, 302, 326, 351. Indeed, the pain specialist who examined plaintiff, and who concluded her pain most likely was myofascial (see AR 307), stated it was "clear that the [physical therapy] she [was] doing [did not] produce better pain control or improved range of motion." AR 308. Thus, here too the ALJ appears to be acting as his own medical expert.[1] Further, in addition to its lack of effectiveness, as discussed in greater detail below, plaintiff's failure to participate in physical therapy to the extent the ALJ deems she should have or was recommended, should not be held against her in light of her apparent inability to afford such continued treatment. See AR 93, 319, 354; Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment because of inability to afford it); Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995) (ALJ must examine personal factors bearing on whether claimant can reasonably remedy impairment before basing denial of benefits on noncompliance).

As for the alleged evidence of the "treatment or evaluations" the ALJ asserts Dr. Tonder or plaintiff did not provide, the ALJ once more fails to explain what that evidence likely would have shown, or that it would have shed any different light on this case than the evidence already contained in the record. Nor is there any indication the ALJ sought to obtain such evidence as he would have been required to do if he felt the record was incomplete. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ has duty to fully and fairly develop record); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (duty to develop record triggered when record is

---

[1] For these reasons, the undersigned also finds lacking in validity the ALJ's rejection of Dr. Tonder's opinions on the basis that she "continued to prescribe increasing levels of narcotic medication" and did not require plaintiff "to follow through with physical therapy." AR 135.

REPORT AND RECOMMENDATION - 7

inadequate to allow for proper evaluation of evidence).

The ALJ's reliance on the conclusions of Dr. Stankus to reject the opinions of Dr. Tonder also lacks legitimacy. The undersigned finds the fact that Dr. Stankus found plaintiff's "history" to be "most consistent with degenerative disk disease" as opposed to stenosis to be irrelevant, as Dr. Stankus, like Dr. Tonder, noted a significant decrease in plaintiff's range of motion. See AR 326 ("[T]he patient has a reduction in the range of motion of her neck in all planes."). Nor, for the reasons discussed above, does the undersigned find significant the fact that Dr. Stankus found "no clear evidence of neurologic dysfunction consistent with a radiculopathy." Id.

Also improper was the ALJ's rejection of Dr. Tonder's opinions in part on the basis that the record suggested "she has moved into the realm of advocate." AR 135. [A]bsent "evidence of actual improprieties," however, the purpose for which a medical report or opinion is obtained is not a legitimate basis for rejecting it. See Lester, 81 F.3d at 832 ("An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner."). Other than noting that Dr. Tonder found plaintiff was essentially disabled in each of the evaluation reports she completed – which in itself does not constitute "evidence of actual improprieties" – the ALJ does not point to anything else in the record to discount that physician's credibility on this basis.

As for the fact that Dr. Tonder did not address "the opinions of many of the experts who have examined [plaintiff] or the lack of objective neurologic findings" (AR 135), again the ALJ has failed to show that such findings are necessary to establish disability in this case. Further, there is no requirement that a treating physician address the findings or opinions of other medical sources in the record in order to issue a valid opinion of his or her own. Indeed, the very reason that treating physician opinions generally are given the greatest weight, is because the treatment

REPORT AND RECOMMENDATION - 8

relationship itself often provides a far better picture of the claimant's condition than the findings of other sources. See 20 C.F.R. § 404.1527(d)(2), 20 C.F.R. § 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

The substantial weight of the other objective medical evidence in the record, furthermore, tends to support Dr. Tonder's disability opinions overall. It is true that the record contains an opinion from a state agency, non-examining consultative physician, who opined that plaintiff was able to perform a modified range of sedentary work. See AR 393-400, 472. As noted above, however, non-examining physician opinions constitute substantial evidence only if they are consistent with other independent evidence in the record. In this case, though, the evidence in the record overall supports a finding of inability to work. For example, Maria C. Brooks, M.D., who appears to initially have treated plaintiff for at least a period of time, found plaintiff to be severely limited in her ability to perform basic work activities, and did so – as did Dr. Tonder – apparently on the basis of physical examination findings of tenderness and very limited neck and back range of motion. See AR 93-94, 302, 319, 330, 333, 353-54.

As discussed above, furthermore, Dr. Stankus noted significant limitations in plaintiff's range of motion as well, as did the pain specialist, along with tenderness upon palpation. See AR 307-08, 326. Another physician, Hai Nguyen, M.D., noted tenderness and "severely decreased" range of motion upon examination, and found her to be severely limited in her ability to perform work-related activities. AR 76, 79-80; see also AR 82-83. While the evidence from Dr. Nguyen

REPORT AND RECOMMENDATION - 9

was submitted for the first to the Appeals Council after the ALJ had issued his decision – and thus the ALJ cannot be faulted for failing to address them – defendant does not argue that this evidence is not part of the record or that this Court cannot consider it in determining whether the ALJ's decision is supported by substantial evidence. See Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (reviewing court may consider evidence submitted to Appeals Council in determining whether ALJ's decision is supported by substantial evidence); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional materials submitted to Appeals Council properly may be considered, because Appeals Council addressed them in context of denying claimant's request for review); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (evidence submitted to Appeals Council is part of record on review to federal court).

II.     The ALJ Erred in His Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

REPORT AND RECOMMENDATION - 10

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Plaintiff argues the ALJ failed to provide sufficient clear and convincing reasons to reject her symptom testimony. The undersigned again agrees. The ALJ in this case rejected plaintiff's reported level of pain in part on the basis that it was inconsistent with the medical evidence in the record. See AR 134; Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement). As discussed above, however, the substantial weight of the medical evidence in the record supports plaintiff's claims of severe limitations due to pain and loss of range of motion and inability to work.

The ALJ further discounted plaintiff's credibility based on her failure to follow through with recommended physical therapy. The failure by a claimant to assert a good reason for not following a prescribed course of treatment or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). But the ALJ "must not draw any inferences" about a claimant's symptoms and their functional effects from such a failure, "without first considering any explanations" that

REPORT AND RECOMMENDATION - 11

the claimant "may provide, or other information in the case record, that may explain" that failure. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 *7.

Thus, it is improper to discount credibility on the basis of failure to pursue recommended treatment, when the claimant "has a good reason for not" doing so. Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). One such reason is where the claimant "may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit" him or her. SSR 96-7p, 1996 WL 374186 at *8. In this case, as discussed above, the pain specialist himself, upon whose evaluation the ALJ relied in part to reject Dr. Tonder's opinions, expressly stated it was "clear" the physical therapy plaintiff was doing did not produce better pain control or improve her range of motion. See AR 308. The lack of insurance coverage constitutes another good reason. See Carmickle, 533 F.3d at 1162. Here again, as pointed out by plaintiff, the record contains clear evidence that she did not continue physical therapy in part due to such lack of coverage. See 93 ("[Plaintiff u]nable to go to physical therapy . . . insurance does not cover this service."), 319 ("Her insurance would not pay for the [physical therapy]."), 354 ("She did not qualify to have [physical therapy] in her current medical insurance.").

The ALJ also discounted plaintiff's credibility in part due to drug-seeking behavior. See Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered claimant's drug-seeking behavior). The record does document one episode in which plaintiff sought to have her pain medication increased, and became upset when she was told her pain medication contract did not allow for that. See AR 438. There also were some occasions when she did seek to have her pain medication increased or refilled early. See AR 303, 434, 495-96. But, as plaintiff points out, the record shows she continued to be prescribed pain medication and even on an early basis

REPORT AND RECOMMENDATION - 12

at times, and no medical source, including Dr. Tonder, has indicated that such prescriptions were inappropriate or that she was abusing her medication. See AR 34, 36, 58, 67, 73, 303, 309, 320, 422-23, 487, 490. Indeed, the pain specialist, upon whom as noted above the ALJ relied in part, expressly found plaintiff's lack of "history of abuse or diversion" placed her at a "low risk for addiction." AR 309. There is also evidence plaintiff tapered down and/or stopped taking some medications or did not request further refills. See AR 38, 40, 54, 60, 67. Thus, the undersigned finds the record does not support a finding of drug-seeking behavior.[2]

The ALJ further discounted plaintiff's credibility in part because the record documents "times when she was able to do all her activities of living," as well as "times when she was doing gardening despite the fact that she lives in an apartment." AR 135. In determining whether a claimant's symptom testimony is credible, the ALJ may consider that claimant's daily activities. Smolen, 80 F.3d at 1284. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

First, a claimant's daily activities can "meet the threshold for transferable work skills." Smolen, 80 F.3d at 1284 Such testimony may be rejected, though, only if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. However, the claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. Second, a claimant's daily activities can "contradict his

---

[2] The ALJ also made appears to have discounted plaintiff's credibility in part on the fact that she was taking pain medication "even before her alleged onset" date of disability. AR 134. But there is no requirement that the date when a claimant begins taking medication must coincide with the date he or she alleges the disability began. That is, evidence of taking medication prior to an alleged onset date of disability is not in itself evidence that the claimant is not or did not become disabled as of that date.

REPORT AND RECOMMENDATION - 13

[or her] other testimony." Orn, 495 F.3d at 639.

Neither of these grounds is applicable here. First, the record fails to show the activities plaintiff engaged in are the type transferrable to a work setting or that she spent a substantial part of her day performing them. See 150-53, 156-57, 159-60, 163-65, 263-68. Dr. Tonder did state in one progress note that plaintiff was "[a]ble to do all" or "most" of her activities of daily living, but there is no description in that note of what those activities were, or that they involved more than the minimal activities that have been reported elsewhere in the record. See AR 422. Indeed, to the extent plaintiff did engage in activities of daily living at the requisite level, the ALJ noted the record showed she could engage in them only at times. See AR 135. Nor do the activities as described in the record contradict plaintiff's other testimony. Indeed, while, as noted above, the ALJ found she engaged in gardening at "times", the record reveals only one report of gardening that resulted in a flare up of her symptoms. See AR 496.

Finally, the ALJ discounted plaintiff's credibility in part for the following reasons:

> . . . She was . . . not working prior to her alleged onset. The claimant alleges disability since March of 2005, but her earnings record shows that she has not engaged in substantial gainful activities since 1997 and maybe 2000 (Exhibit 4D). This suggests that her pain has not been the reason for her not working.

AR 134. Poor work history may constitute a valid basis for discounting a claimant's credibility. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found claimant's extremely poor work history and lack of propensity to work in her lifetime negatively affected her credibility regarding her inability to work); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other than his alleged impairment).

Plaintiff argues that in order to discount a claimant's credibility on the basis of poor work history, there also must be evidence of secondary gain, citing this Court's prior decision in Hill

REPORT AND RECOMMENDATION - 14

v. Astrue, 2008 WL 2782907 (W.D. Wash.). But as defendant correctly points out, the ALJ in Hill expressly stated he was discounting the claimant's credibility specifically on the basis that her sporadic work history raised "a question as to whether" her continuing unemployment was "actually due to medical impairments or if secondary gain is a possible motive." Id. at *17. That is, the issue there was whether the claimant's poor work history itself constituted valid evidence of a secondary gain motive.

Here, though, the ALJ did not make that finding, but rather pointed out that plaintiff had stopped work for reasons other than her medical impairments and that she had a sporadic work history, which is in line with both Bruton and Thomas. Plaintiff argues those two Ninth Circuit cases are distinguishable, because the claimants' poor work history was noted along with other reasons for discounting their credibility. But the Ninth Circuit gave no indication in those cases that a finding of poor work history must be accompanied by other stated reasons. Rather, poor work history – or stopping work for reasons other than medical impairment – was one of several valid reasons noted for discounting the claimants' credibility. See Thomas, 278 F.3d at 959; Bruton, 268 F.3d at 828. Nor does the undersigned find any more legitimate the other reasons plaintiff puts forth for distinguishing Bruton and Thomas from this case. The undersigned also declines to impose a secondary gain requirement here on the basis that it "makes sense," given that the Ninth Circuit, as just discussed, has not itself imposed one.

Nevertheless, the undersigned finds this one valid reason the ALJ gave for discounting plaintiff's credibility does not overcome the many other erroneous reasons the ALJ gave for not finding her to be fully credible. That is, while the fact that some of the reasons for discounting a claimant's credibility are improper does not necessarily render an ALJ's adverse credibility determination invalid, this is so only as long as that determination is supported by substantial

REPORT AND RECOMMENDATION - 15

evidence in the record. See Tonapetyan, 242 F.3d at 1148.  Such is not the case here, especially given the fact that, as discussed above, the ALJ also erred in rejecting the opinions of plaintiff's treating physician, which support a finding of severe work-related limitations.

III.     The ALJ Erred in Evaluating the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

At the hearing, plaintiff's daughter provided testimony concerning her observations of plaintiff's symptoms and limitations. See AR 162-65.  Plaintiff argues that although the ALJ summarized her daughter's testimony, he did not provide any interpretation or analysis thereof, and thus improperly disregarded it.  Defendant argues the Court can infer the ALJ rejected her testimony for the same reasons that he rejected plaintiff's, because those reasons were provided after the ALJ had summarized both plaintiff's and her daughter's testimony.  While this reading of the ALJ's decision may be plausible, as the ALJ set forth his adverse credibility determination soon after also expressly noting that both plaintiff and her daughter portrayed plaintiff as "unable to function due to extreme pain and an inability to move her neck" (AR 133), and while an ALJ in appropriate cases may discount lay witness testimony for the same reasons that the claimant's credibility is discounted (see Valentine v. Commissioner Social Security Administration, 574

REPORT AND RECOMMENDATION - 16

F.3d 685, 694 (9th Cir. 2009))³, the reasons the ALJ gave in this case were not valid as discussed above. Accordingly, the ALJ erred here too.

IV.     This Matter Should Be Remanded for an Award of Benefits

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). In this case, the ALJ failed to provide valid reasons for rejecting the opinion evidence from Dr.

---

³ In Valentine, the Ninth Circuit discussed its basis for doing so as follows:

> [The lay witness's] testimony of her husband's fatigue was similar to [the claimant's] own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [the claimant's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."

Id.

REPORT AND RECOMMENDATION - 17

Tonder, plaintiff's treating physician, that she is severely limited in her ability to perform basic work-related activities and is disabled. The substantial weight of the objective medical evidence in the record, furthermore, supports those opinions. In addition, the ALJ erred in discounting the credibility of plaintiff and – to the extent, as discussed above, it can be inferred that the ALJ did address it – in rejecting the lay witness evidence in the record, both of which support plaintiff's allegations of disabling symptoms and limitations.

Where, as here, the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating . . . physician," that opinion is credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted). In addition, because the weight of the evidence supports a disability finding when that evidence is credited, the <u>Smolen</u> test has been met. <u>See</u> <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003). This is not a case, furthermore, "where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," such that remand "for further proceedings rather than payment of benefits" is more appropriate. <u>Id.</u>; <u>see</u> <u>also</u> AR 175 (vocational expert testifying that individual who is limited to sedentary work and who is limited by significant complaints that reduce that individual's ability to maintain persistence and pace to less than 40-hour workweek in terms of missing four to eight hours of work sporadically per week, would over time rule out competitive employment), 508 (Dr. Tonder opining that combination of plaintiff's impairments would result in her being absent from work three or more days per month on more probable than not basis). Accordingly, the undersigned finds a determination of disability and an award of benefits is appropriate based on the improperly rejected medical evidence.

Similarly, "where the ALJ improperly rejects the claimant's testimony regarding his [or her] limitations, and the claimant would be disabled if his [or her] testimony were credited," the

REPORT AND RECOMMENDATION - 18

Court "will not remand [a case] solely to allow the ALJ to make specific findings regarding that testimony." Lester, 81 F.3d at 834 (citation omitted). Instead, "that testimony is also credited as a matter of law." Id.; see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (remand for award of benefits is required where ALJ's reasons for discounting claimant's credibility are not legally sufficient, and it is clear from record ALJ would be required to find claimant disabled if claimant's testimony had been credited). The same is true in this case in regard to the invalidly rejected lay witness testimony. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000). (finding that when lay evidence rejected by ALJ was given effect required by federal regulations, it became clear claimant's limitations were sufficient for disability finding). A determination of disability thus also is warranted based on plaintiff's improperly discounted credibility as well as the improperly rejected lay witness evidence, as both plaintiff's reports and the testimony of the lay witness are consistent with the improperly rejected medical evidence.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse defendant's decision and remand this matter for an award of benefits.[4]

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

---

[4] Plaintiff has asked for an award of attorney's fees and costs pursuant to the Equal Access to Justice Act. To the extent plaintiff is entitled to such fees and costs, however, an award thereof shall not be determined at this time. Rather, plaintiff must file a separate appropriately supported motion requesting them subsequent to the Court's order regarding this Report and Recommendation.

REPORT AND RECOMMENDATION - 19

is directed set this matter for consideration on **August 12, 2011**, as noted in the caption.

DATED this 25th day of July, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20